

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112071 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ralls County |
| v. | ) | Case No. 22RL-CR00266 |
| | ) | |
| DOUGLAS BEESON, | ) | Honorable David C. Mobley |
| | ) | |
| Appellant. | ) | Filed: March 4, 2025 |

### Introduction

Douglas Beeson ("Appellant") appeals from the judgment upon his conviction following a jury trial for assault in the fourth degree, possession of a controlled substance, leaving the scene of an accident, resisting arrest, unlawful possession of drug paraphernalia, and misdemeanor driving while intoxicated. On appeal, Appellant argues the trial court erred in denying his motion to suppress the contraband found in the vehicle he was driving and in admitting that evidence at trial. We affirm the judgment of the trial court.

### Factual and Procedural Background

Facts

Viewed in the light most favorable to the trial court's ruling, *see State v. Gates*, 683 S.W.3d 726, 730 (Mo. App. E.D. 2024), the facts presented at the evidentiary hearing and trial are as follows.

1

On August 21, 2022, multiple 911 calls reported a stationary vehicle sitting in the left lane of Interstate 70 in Montgomery County. Deputy H. was dispatched to this vehicle.[1] While en route, Deputy H. received another report that there was an accident, and the suspect vehicle that had been reported sitting on the interstate had fled that location. Deputy H. found a dark colored Chevy sedan on the highway median against a concrete barrier approximately one mile from the first crash site.

As Deputy H. approached the vehicle, he noticed the driver was slumped in his seat and appeared unaware that law enforcement was behind him. Deputy H. noticed the smell of burnt marijuana emanating from the area and radioed that he believed the accident was a driving-while-intoxicated incident. Deputy H. also noticed the left rear tire of the vehicle had broken off the vehicle's axle.

At the vehicle, Deputy H. saw Appellant slumped over and unresponsive in the driver's seat. Appellant had a cigarette hanging out of his mouth and was unaware that Deputy H. was at the vehicle. Deputy H. knocked on the window and startled Appellant. Appellant told Deputy H. he was sorry and that he just wanted to leave.

Appellant then attempted to put the vehicle in drive and drive away, but the vehicle was already in drive. Deputy H. told Appellant he was in an accident and was not free to leave. Deputy H. told Appellant to roll down his window, which Appellant did. Appellant continued to tell Deputy H. he wanted to leave.

Appellant started to reach between the driver's seat and center console. Deputy H. told Appellant to stop reaching and to get out of the vehicle. Appellant failed to comply with Deputy

---

[1] The personal identifying information of witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

2

H.'s commands and continued reaching. Deputy H. informed Appellant that, if he did not comply, he would be tased. When Deputy H. pulled out his taser, Appellant began to comply. Seeing Appellant comply, Deputy H. put away his taser.

Appellant then reached towards the glove box and backseat area. Deputy H. placed one handcuff on Appellant's left wrist and attempted to remove him from the vehicle. Deputy H. informed Appellant he would be tased if he did not comply. Appellant did not comply, and Deputy H. attempted to tase Appellant. The taser failed to stop Appellant. Deputy H. then "delivered a second point of contact" into Appellant's upper shoulder area where he attempted to achieve "neuromuscular incapacitation." Deputy H. was able to remove Appellant from the vehicle.

Deputy H. placed his taser back in its holster and tried to place Appellant in a wrist lock. Appellant fell to his knees, and Deputy H. attempted to place Appellant's hands behind his back. At that point, Appellant asked Deputy H. if he wanted to "fucking fight," stood up, and punched the side of Deputy H.'s face. Deputy H. again drew his taser and delivered one or two "dry stuns" to Appellant. This failed to stop Appellant. As the fight continued, Deputy H. believed that Appellant was trying to pull him to the ground.

After Appellant hit Deputy H. multiple times, Deputy H. felt his taser pulled from his grasp. Deputy H. drew his firearm and saw Appellant looking for the taser, which had landed approximately one foot from where Appellant was looking. Deputy H. retrieved the taser before Appellant found it. Deputy H. returned to his patrol vehicle, where he held Appellant at gunpoint until reinforcements arrived. Law enforcement then took Appellant into custody.

During his encounter with Appellant, Deputy H. observed that Appellant's eyes were "glassy and staring," Appellant was stuttering, his speech seemed agitated, and he used vulgarity

3

and fighting words. Appellant also lacked coordination and balance while attempting to fight Deputy H.

Deputy H. searched Appellant's vehicle for evidence of impairment. Deputy H. found a crystalline substance, which he recognized as methamphetamine. Deputy H. also found three tinfoil devices used for inhaling narcotics. The methamphetamine and tinfoil devices were found on the floorboard against the front of the driver's seat. Deputy H. took photographs of the evidence he found.

The Missouri State Highway Patrol arranged to tow Appellant's vehicle, which was removed from the roadway.

<u>Procedural History</u>

The State charged Appellant, via felony complaint, with assault in the third degree, disarming a peace officer while performing an official duty, possession of a controlled substance, leaving the scene of a motor vehicle accident, resisting arrest, possession of drug paraphernalia, and driving while intoxicated.

*Motion to Suppress*

Appellant moved to suppress the methamphetamine and drug paraphernalia, and that "the state be prohibited from introducing such materials into evidence and from eluding [sic] to any such information during trial." Appellant alleged Deputy H. searched his vehicle without a search warrant and that no warrant exception, including the automobile exception, applied.

On June 23, 2023, the trial court held a hearing on Appellant's motion. Appellant argued the automobile exception did not apply to Deputy H.'s search because the vehicle's tire was detached from the axle, the vehicle was immobile, and there was no exigency. Appellant also argued that Deputy H. lacked probable cause to search the vehicle.

4

After hearing testimony and receiving evidence, the trial court denied Appellant's motion. The trial court found probable cause to search the vehicle. The court reasoned that a reasonably prudent person would believe that evidence of a crime, such as weapons or contraband, would be found in the vehicle. The trial court also concluded the automobile exception to the warrant requirement applied. The case proceeded to trial.

*Trial*

At trial, Deputy H. testified, without objection, that he found methamphetamine and drug paraphernalia during his search of the vehicle. The State also introduced into evidence State's exhibits 3 and 4, photographs of the drug paraphernalia and methamphetamine, to which Appellant stipulated. Appellant only later objected to the admission of State's exhibits 5 and 6, the physical evidence of the drug paraphernalia and methamphetamine.

At the conclusion of the trial, the jury found Appellant guilty of the lesser-included offense of assault in the fourth degree, not guilty of disarming a peace officer while performing an official duty, and guilty of possession of a controlled substance, leaving the scene of a motor vehicle accident, resisting arrest, possession of drug paraphernalia, and driving while intoxicated. Appellant now appeals.

**Discussion**

Preservation

As an initial matter, we consider whether Appellant has preserved for our review his claim that the trial court erred in denying his motion to suppress evidence of the methamphetamine and drug paraphernalia and admitting the evidence at trial. The State argues Appellant failed to preserve his claim because he did not renew his objection or make a specific objection at trial when evidence of the contraband was first presented. The State points out that it

adduced testimony and photographic evidence of the methamphetamine and drug paraphernalia at trial without objection, before Appellant objected to the physical evidence. The State argues Appellant waived his claim of error because he failed to object to the testimony and photographic evidence of the items found in the challenged search at the earliest opportunity.

Appellant replies that he preserved the claim with his objection to the admission of the physical evidence at trial, and included the claim of error in his motion for new trial.

We conclude Appellant failed to preserve this issue for appellate review because he failed to object to the admission of the evidence at the earliest opportunity. "When a trial court denies a defendant's pre-trial motion to suppress, the defendant must renew the objection or make a specific objection at trial when the evidence is presented to preserve the issue for appellate review." *State v. Loggins*, 445 S.W.3d 105, 110 (Mo. App. E.D. 2014). Failing to object at the earliest opportunity fails to preserve the claim of error for appellate review. *State v. Drisdel*, 417 S.W.3d 773, 785 (Mo. App. E.D. 2013).

At trial, the State adduced direct testimony in which Deputy H. alluded to his finding the methamphetamine and drug paraphernalia during his search of the vehicle. The State also introduced State's exhibits 3 and 4, the stipulated photographs of the same drug paraphernalia and methamphetamine. Appellant opted to object only later to the admission of State's exhibits 5 and 6, the physical evidence of the drug paraphernalia and methamphetamine. Appellant failed to object at the earliest opportunity to the evidence he sought to suppress, and thus failed to preserve his claim for appellate review. *Id.* We may review only for plain error. *Id.*

Standard of Review

Plain error review is a two-step process. *State v. Wilson*, 692 S.W.3d 54, 65 (Mo. App. E.D. 2024). "First, we determine whether the record facially establishes substantial grounds to

6

believe plain error occurred, which is error that is evident, obvious, and clear, resulting in manifest injustice or a miscarriage of justice." *Id.* "If so, we may then consider whether the error actually resulted in manifest injustice or a miscarriage of justice." *Id.*

<u>Analysis</u>

Appellant argues the trial court erred in denying his motion to suppress the evidence found in the vehicle because the automobile exception to the Fourth Amendment warrant requirement does not apply as the vehicle was not capable of movement at the time of the search.

The Fourth Amendment protects citizens against "unreasonable searches and seizures and requires that no warrant shall issue except on probable cause supported by oath or affirmation." *State v. Donovan*, 539 S.W.3d 57, 65 (Mo. App. E.D. 2017). "Generally, 'warrantless seizures are unreasonable and unconstitutional.'" *Id.* (quoting *State v. Walker*, 460 S.W.3d 81, 85 (Mo. App. W.D. 2015)). "However, 'a warrantless search will not offend the Fourth Amendment if it was conducted pursuant to a well-recognized exception.'" *Id.*

One exception to the warrant requirement is the automobile exception. *Id.* at 65. "Automobiles present an 'exigent circumstance,' where 'the mere possibility that the vehicle can be moved' provides sufficient justification for a warrantless search." *Id.* (quoting *Walker*, 460 S.W.3d at 85). "Under this exception, police may search anywhere in a vehicle 'pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile.'" *Id.* (quoting *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990)). "[P]robable cause to search ... exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.* (quoting *State v. Hampton*, 959 S.W.2d 444, 451 (Mo. banc 1997)).

7

Here, Appellant argues the automobile exception does not apply because his vehicle was immobile after the accident. Appellant primarily relies on the testimony of Deputy H., who testified that Appellant's vehicle was not drivable because a tire was broken off at the axle. The State responds that the automobile exception still applies, despite that the vehicle was inoperable at the time of the search. The State argues that, so long as law enforcement has "probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle," even if it is completely inoperable.

We hold that Deputy H. had probable cause to search the vehicle and the automobile exception applies. Deputy H. was notified that Appellant's vehicle was stopped on the interstate and was involved in an accident, and that Appellant fled from the scene of the accident. As Deputy H. arrived on the scene, he saw Appellant's damaged vehicle and smelled burnt marijuana.[2] He also observed that Appellant was slumped behind the wheel, had his eyes closed, was unresponsive, had a cigarette in his mouth, and was unaware of Deputy H.'s presence. These observations caused Deputy H. to begin investigating the accident as a driving-while-intoxicated incident.

When Deputy H. knocked on the window, Appellant appeared startled, stated he wanted to leave, and attempted to drive away. After Deputy H. informed Appellant he could not leave, Appellant started to reach between the driver's seat and center console of the vehicle. Despite Deputy H.'s order to stop reaching, Appellant continued to reach towards the center console.

---

[2] During the hearing on Appellant's motion to suppress, Deputy H. testified that his detection of the odor of marijuana did not influence his probable cause determination to search the vehicle. Whether or not this Court considers the marijuana odor, probable cause supported the search of the vehicle.

After Deputy H. warned Appellant he would be tased if he did not stop reaching, Appellant reached for the glovebox and backseat.

Then a struggle ensued, in which Deputy H. attempted to tase Appellant and had to pull Appellant from the vehicle. Appellant asked Deputy H. if he wanted to "fucking fight," stood up aggressively, and punched Deputy H. in the head multiple times. After Deputy H. drew his firearm, Appellant finally relented and was taken into custody with the assistance of other officers. During the struggle, Deputy H. observed that Appellant's eyes were "glassy and staring," his speech was stuttered and agitated, and he was uncoordinated and off-balance.

These various signs of Appellant's drug-induced intoxication, his persistently reaching for areas of the vehicle where contraband or weapons could be found, and his erratic and belligerent behavior easily amounted to probable cause to search Appellant's vehicle for contraband, weapons or evidence of a crime. Still, Appellant argues the automobile exception does not apply because the vehicle was not readily mobile at the time it was searched.

This Court has previously expressed that "automobiles present an 'exigent circumstance,' where 'the mere possibility that the vehicle can be moved" provides sufficient justification for a warrantless search.'" *Donovan*, 539 S.W.3d at 65 (quoting *Walker*, 460 S.W.3d at 85). This Court explained that "police may search anywhere in a vehicle 'pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile.'" *Id.* (quoting *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990)). "A search under the automobile exception is justified not by the arrest of the occupant, but by the circumstances establishing probable cause." *Id.* at 65.

To satisfy the automobile exception, the State need only demonstrate there was "probable cause to believe that contraband, weapons or evidence of a crime are within the automobile." *Id.* We already have determined that probable cause supported the search of the vehicle.

That the vehicle was not readily mobile at the time of the search does not negate the automobile exception. While Appellant's argument that a tire had broken off the axle may implicate one of the rationales underlying the automobile exception, it does not render the automobile exception inapplicable. There are two rationales for the automobile exception: first, exigent circumstances from the inherent mobility of automobiles, *see id.*, and second, a reduced expectation of privacy in an automobile due to "pervasive regulation by official authorities." *State v. Donohoe*, 770 S.W.2d 252, 255 (Mo. App. W.D. 1989); *see also United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023); *United States v. Fields*, 456 F.3d 519, 524 (5th Cir. 2006).

Here, assuming without deciding there was no exigent circumstance due to the apparent immobility of Appellant's automobile, the second, pervasive-regulation rationale for the automobile exception remains. As the United States Court of Appeals for the Fifth Circuit has held, "even where an automobile is not immediately mobile at the time of the search, 'the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception.'" *Fields*, 456 F.3d at 524 (quoting *California v. Carney*, 471 U.S. 386, 391 (1985)) (alteration in original).[3] The "reduced expectations of privacy [in a vehicle] derive ... from the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* (quoting *Carney*, 471 U.S. at 392) (alteration in original).

---

[3] "Even though federal precedents are not binding, they constitute persuasive authority." *State v. Harris*, 658 S.W.3d 135, 143 (Mo. App. E.D. 2022).

In sum, the automobile exception to the warrant requirement applies and is satisfied here. Appellant fails to demonstrate any error, let alone error that is evident, obvious, and clear. We therefore decline plain error review.

Point denied.

## Conclusion

We affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

11